DECISION.
{¶ 1} Defendant-appellant Thomas James appeals from his conviction for domestic violence in violation of R.C. 2919.25. We affirm the judgment of the trial court.
 {¶ 2} James was charged with domestic violence against his live-in girlfriend, Tracy Hutchinson. During the bench trial, the witnesses' accounts of the events leading to the charge differed.
 {¶ 3} Tracy Hutchinson's mother, Pamela Hutchinson, was the sole witness for the state. She testified that on the night of December 11, 2003, Tracy called her from the house where she lived with James. According to Pamela, Tracy was hysterical and asked Pamela to pick her up because there was "some kind of altercation going on." Pamela testified that she drove to the house and did not see Tracy waiting outside. Tracy again called Pamela and told her that Pamela had passed her two or three times and that she was back at the house. Pamela returned to the driveway of the house. When Tracy did not come out of the house, Pamela became alarmed and called the police. While on the phone with the police, Pamela saw Tracy and James on the porch of the house. According to Pamela, James had his hands around Tracy's throat, and he bent her back over the porch railing and shook her. Then, James pulled Tracy back inside the house. A moment later, Tracy ran out of the house without her coat and jumped in the car. Pamela testified that, while in the car, Tracy was still hysterical and had stated that James "had been smacking her around, and she was just so tired of it." Pamela stated that, in the past three years, her daughter had called her several times to pick her up from the house.
 {¶ 4} Pamela took pictures of Tracy three or four days after the incident. The photographs showed that Tracy had a black eye, a scratch on her chest, and bruises on her arm. Pamela stated that she did not see James strike Tracy.
 {¶ 5} Tracy testified for the defense. Her account of December 11, 2003, differed considerably from her mother's. According to Tracy, the altercation that night was between her and James's son, Justin. Tracy had called her mother because she wanted to remove herself from the situation with Justin. She had had some alcoholic beverages and did not want to drive her car. She stated that James had not been in the room when the altercation with Justin occurred, and that what her mother saw on the porch was James trying to convince her not to leave the house. Tracy also testified that the reason she did not have a coat on when she went to her mother's car was that James had touched it when he was trying to convince her to stay, and that she had taken it off and had left. He was not, Tracy stated, "pulling on it or choking" her. Tracy also testified that her mother did not like James and that, prior to the trial, Pamela had told her to "start believing" Pamela's version of the incident.
 {¶ 6} James testified on his own behalf. He denied that he was involved in the altercation with Tracy. His testimony differed slightly from Tracy's. He stated that, contrary to Tracy's testimony, he and Tracy had not been on the porch but in the doorway. Also, he said that he had held Tracy by the coat while trying to convince her to stay and that she had squirmed out of the coat before running to her mother's car. When asked about Tracy's injuries, James said, "I'm not saying my son had caused these physical — this physical harm to her." When asked by the prosecutor if he was saying Tracy did it to herself, James responded, "I am not saying she didn't either."
 {¶ 7} At the end of the testimony, the trial court found James guilty of domestic violence and sentenced him to the maximum term of 180 days of confinement.
 {¶ 8} James now asserts three assignments of error. His first two assignments of error challenge the sufficiency and the weight of the evidence against him. We consider the challenge to the sufficiency of the evidence first.
 {¶ 9} A sufficiency argument challenges whether the state presented adequate evidence on each element of the offense.[1] "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[2]
 {¶ 10} R.C. 2919.25(A) provides, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Having thoroughly reviewed the record, we conclude that the state presented adequate evidence that James had knowingly caused physical harm to Tracy Hutchinson. The second assignment of error is overruled.
 {¶ 11} While a challenge to the sufficiency of the evidence questions only the adequacy of the evidence presented, a claim that a conviction was against the manifest weight of the evidence requires this court to weigh the evidence to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[3] "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."[4]
 {¶ 12} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts."[5] While we are able to read the witnesses' testimony in the transcript of the proceedings, the trial court observed the demeanor of the witnesses firsthand. As the finding of guilt indicates, the trial court believed Pamela's version of the incident over that of Tracy and James. Having reviewed the record, we are unable to conclude that the trial court clearly lost its way and that its finding of guilt was against the manifest weight of the evidence. The first assignment of error is overruled.
 {¶ 13} In his final assignment of error, James asserts that the trial court erred in imposing the maximum sentence.
 {¶ 14} We review a misdemeanor sentence under an abuse-of-discretion standard.[6] R.C. 2929.22 sets out factors that the trial court must consider in imposing a sentence for a misdemeanor. The maximum authorized jail term may be imposed for a misdemeanor "only upon offenders who commit the worst forms of the offense or upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future crime."[7]
 {¶ 15} James was found guilty of a first-degree misdemeanor. The jail term for a first-degree misdemeanor must not be more than 180 days.[8]
Absent a showing to the contrary by the defendant, the trial court is presumed to have considered the required factors when the sentence imposed for a misdemeanor is within the statutory limits.[9]
 {¶ 16} James argues that it was an abuse of the trial court's discretion to consider his prior acquittal for domestic violence. We disagree. R.C. 2929.22(D)(1) mandates that the trial court consider "any relevant * * * statement made by the victim, the defendant, the defense attorney, or the prosecuting authority regarding sentencing for a misdemeanor." After the prosecutor mentioned the prior charge and subsequent acquittal, James was given a chance to address the trial court. He acknowledged the previous charge, stating that "[a]s far as the 2002 case, there was alcohol involved, as well as this time." We conclude that the trial court did not abuse its discretion in considering James's history with Tracy in imposing the sentence. The third assignment of error is overruled.
 {¶ 17} We therefore affirm the judgment of the trial court.
Judgment affirmed.
Hendon, J., concurs.
Doan, P.J., dissents.
[1] See State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541.
[2] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[3] State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
[4] Id.
[5] State v. DeHass (1967), 10 Ohio St.3d 230, 231, 227 N.E.2d 212.
[6] State v. Beachy, 9th Dist. No. 02CA0020, 2003-Ohio-1285, at ¶ 4.
[7] R.C. 2929.22(C).
[8] R.C. 2929.24(A)(1).
[9] Beachy, supra, at ¶ 9.